PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

BOARD OF TRUSTEES OF THE SHEET
METAL WORKERS' NATIONAL PENSION
FUND, in its Capacity as Plan
Administrator,

*Petitioner-Appellee,*

v.

COMMISSIONER OF INTERNAL REVENUE,
*Respondent-Appellant.*

No. 02-1273

Appeal from the United States Tax Court.
(Tax Ct. No. 00-6157)

Argued: October 29, 2002

Decided: January 31, 2003

Before NIEMEYER, WILLIAMS, and GREGORY, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Williams and Judge Gregory joined.

## COUNSEL

**ARGUED:** Thomas James Sawyer, Tax Division, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Ste-
phen Mark Rosenblatt, Chief Counsel, SHEET METAL WORKERS'
NATIONAL PENSION FUND, Alexandria, Virginia, for Appellee.
**ON BRIEF:** Eileen J. O'Connor, Assistant Attorney General, Ken-
neth L. Greene, Tax Division, UNITED STATES DEPARTMENT
OF JUSTICE, Washington, D.C., for Appellant.

**OPINION**

NIEMEYER, Circuit Judge:

To remain qualified for tax-exempt status under 26 U.S.C. §§ 401(a) and 501(a), a pension plan regulated by the Employee Retirement Income Security Act of 1974 ("ERISA") may not eliminate or reduce "the accrued benefit of a participant . . . by an amendment of the plan." 26 U.S.C. § 411(d)(6); 29 U.S.C. § 1054(g) (the ERISA counterpart to § 411(d)(6)). In this case, the Tax Court determined that the trustees of the relevant plan did not violate this "anti-cutback" rule when, in 1995, they amended the plan's terms to eliminate a cost-of-living adjustment ("COLA") for employees who had retired before the January 1, 1991 amendment that first included the COLA.

Contending that the COLA added by the 1991 amendment became "an accrued benefit" even for employees who had retired before January 1, 1991, the Internal Revenue Service ("IRS") argues in this appeal that the elimination of the COLA for these employees violated the anti-cutback rule and that therefore the plan as amended in 1995 does not qualify for tax-exempt status. For the reasons that follow, we reject the IRS' argument and affirm the decision of the Tax Court.

I

The Sheet Metal Workers' National Pension Fund (the "Plan") was established in 1966 by the Sheet Metal Workers' International Association and employers in the sheet metal industry. It is a multi-employer defined benefit pension plan for the benefit of employees in the sheet metal industry.[1] The terms of the Plan before 1991 did not include a COLA among the Plan's benefits.

---

[1] This case actually involves two plans: plan "A" covers employees involved in sheet metal construction, and plan "B" covers employees involved in sheet metal production. Because the two plans have virtually identical provisions, we follow the practice of the parties and denominate the two plans as the "Plan."

In November 1990, the trustees of the Plan voted to amend the Plan to provide a 2% annual COLA as part of the Plan, advising the Plan's participants that "[t]his financial arrangement . . . will make certain that every qualified NPF pensioner will get a COLA payment each December." In December 1991 they paid the participants a 2.04% COLA. Then, by formal amendments made in March and October 1992, a new Article 8 was added to the Plan and made retroactive to January 1, 1991, providing a 2% COLA benefit for all employees, *current and former*, as an "annual supplement to the monthly pension benefits." Thus, even retirees who separated from service before January 1, 1991, began receiving COLA benefits under the Plan for the first time. These benefits were paid each December in 1992, 1993, and 1994 in the form of "a 13th check."

After adding the COLA benefit to the Plan, the trustees learned that the cost of the COLA had been underestimated and that continuing to pay it would have an adverse financial impact on the Plan. Accordingly, in October 1995, they amended the Plan, effective January 1, 1995, to eliminate the COLA for Plan participants who retired before January 1, 1991, the date when the inclusion of the COLA was originally made effective.

The trustees also submitted the 1995 COLA amendment to the IRS, seeking a determination that the Plan remained qualified under 26 U.S.C. § 401(a). The IRS' district office requested advice from the IRS' national office on whether the COLA, which had been included in the Plan effective 1991 by the addition of Article 8, had become an "accrued benefit" within the meaning of 26 U.S.C. § 411(a)(7)(A)(i) and, if so, whether the 1995 Plan amendment discontinuing the COLA for pre-1991 retirees violated the "anti-cutback" rule of 26 U.S.C. § 411(d)(6). The IRS' national office issued a technical advice memorandum concluding that the COLA added by new Article 8 effective 1991 had become an accrued benefit and that its elimination in 1995 for pre-1991 retirees violated the anti-cutback rule. When the Plan declined to modify its documents, the IRS issued a final determination letter stating that the Plan failed to qualify under § 401(a) for 1995 and the years following and that the Plan was not tax exempt under § 501(a).

The Plan's trustees commenced this declaratory judgment action in the Tax Court to determine that the Plan remained qualified under

§ 401(a) on the ground that the COLA added by Article 8 did not create an "accrued benefit" for pre-1991 retirees and that its elimination therefore did not violate the anti-cutback rule. The Tax Court agreed with the trustees and held that the Plan's Article 8 COLA was not an "accrued benefit" for pre-1991 retirees because the benefit did not accrue while the pre-1991 retirees were still "employees." 117 T.C. 220 (2001). Emphasizing Congress' use of the word "employee" in defining "accrued benefit" in § 411(a)(7), the Tax Court concluded that "ERISA was meant to protect only retirement benefits 'stockpiled' during an employe[e]'s tenure on the job."

From the Tax Court's decision, the IRS filed this appeal.

II

Under ERISA and the Tax Code, a qualified pension plan is exempt from taxation, and to remain qualified for tax-exempt status, a plan may not violate the anti-cutback rule which prohibits a plan's elimination or reduction of an accrued benefit. The anti-cutback rule provides: "A plan shall be treated as not satisfying the requirements of this section if the *accrued benefit* of a participant is decreased by an amendment of the plan." 26 U.S.C. § 411(d)(6) (emphasis added). The question presented is whether the Plan's creation of a COLA benefit in 1991 for employees already retired resulted in an "accrued benefit" for those Plan participants and therefore could not later be eliminated. The resolution of this question turns on the Tax Code's definition of "accrued benefit" and the terms of the Plan.

Section 411 of Title 26 defines "accrued benefit" as follows:

(a)(7) Accrued benefit. —

(A) In general. — For purposes of this section, the term "accrued benefit" means —

(i) in the case of a defined benefit plan, the employee's accrued benefit determined under the plan and, except as provided in subsection (c)(3), expressed in the form of an annual benefit commencing at normal retirement age, or

> (ii) in the case of a plan which is not a defined benefit plan, the balance of the employee's account.

26 U.S.C. § 411(a)(7)(A). Although this definition limits the common understanding of an "accrued benefit" — i.e., any benefit that accumulated over time — it does not specifically describe how to determine whether a given benefit for a plan participant is an "accrued benefit." We thus turn to a more extended consideration of the statutory definition's text and immediate context.

Because the Plan in this case is a defined benefit plan, we focus our textual analysis on § 411(a)(7)(A)(i) (defining "accrued benefit" for a "defined benefit plan"). According to this provision, "'accrued benefit' means . . . *the employee's accrued benefit determined under the plan* and . . . expressed in the form of an annual benefit commencing at normal retirement age" (emphasis added). It should be apparent that this definition does not purport to describe what counts as an "accrued benefit" for all participants in all qualifying plans. Rather, the statutory definition is a signpost directing us to look to the terms of the plan at issue. The only apparent textual limit in § 411(a)(7)(A)(i) is that the accrued benefit must be "expressed in the form of an annual benefit commencing at normal retirement age."

A reading of the statutory definition's immediate context — Subchapter D, Part I, which includes 26 U.S.C. §§ 401-420 — provides further insight into the meaning of "accrued benefit." Section 401 begins by establishing that a pension trust, formed by an employer "for the exclusive benefit of his employees or their beneficiaries" with contributions made by the employer, the employees, or both, is qualified for tax-exempt status, subject to the conditions imposed by the statute. 26 U.S.C. § 401(a); *see also* 26 U.S.C. § 501(a). One of the relevant conditions is that the accrual of benefits created by employer and employee contributions to the plan trust become nonforfeitable, as set forth in § 411, which provides for "minimum vesting standards." Section 411 ensures the eventual payout of (1) a retirement benefit (2) created by contributions made by the employer, by the employees, or by both (3) in accordance with the plan in effect while the employee works in the service of the employer. *See, e.g.,* 26 U.S.C. § 411(a)(1)-(2) (providing when the various contributions

vest); § 411(a)(4) (addressing what "service [is] included in determination of nonforfeitable percentage"); § 411(a)(5) (defining "year of service"); § 411(a)(6) (addressing the effects of "breaks in service"). Thus, when § 411(a)(7)(i) refers to "accrued benefit," it refers to a benefit created by the accumulation of contributions and limited in its form of payment as "*determined under the plan*" and "expressed in the form of an annual benefit commencing at normal retirement age" (emphasis added), but it does not describe what a given plan participant's accrued benefit would be. The statute leaves this level of detail to plan drafters who, of course, remain bound by other provisions of ERISA and the Tax Code. Sections 411(b) and (c) reinforce this understanding of "accrued benefit." Section 411(b) recognizes an accumulation of benefits that grows during service, and section 411(c) recognizes an allocation of "accrued benefits" between contributions made by an employer and contributions made by employees. 26 U.S.C. § 411(b), (c).

In sum, while the statute gives a plan contractual latitude to define the nature and amount of benefits to be paid under a qualified pension plan, it requires that a participant's "accrued benefit" not be eliminated or reduced, referring to the participant's retirement benefit that is: (1) expressed by the plan as an annual benefit commencing at normal retirement age and (2) paid from a trust funded by the accumulation of contributions made by the employer, the employees, or both (3) in accordance with plan terms.

The wide latitude given to plans in defining what counts as an "accrued benefit" does not undermine the promises of ERISA. Employees accruing benefits through plans that qualify under ERISA and the Tax Code are promised benefits upon retirement and, subject to satisfaction of conditions precedent, rightfully expect annual payments of their accrued benefit. *See Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 510-11 (1981) (noting that "ERISA prescribes vesting and accrual schedules, assuring that employees obtain rights to at least portions of their normal pension benefits . . . [and r]etirees rely on this sweeping assurance"); *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 375 (1980) (stating that Congress wanted to "mak[e] sure that if a worker has been promised a defined pension benefit upon retirement — and if he has fulfilled whatever conditions are required to obtain a vested benefit — he actually will receive it").

The anti-cutback rule forms part of ERISA's assurance that benefits promised will be benefits paid. But the security provided by the anti-cutback rule is bounded by the terms of the plan in that the plan defines the benefits promised. "[T]he material available for interpreting ERISA's definition of 'accrual' always refers to the terms of the pension plan itself. It is those terms that raise the 'anticipat[ion of] retirement benefits' that Congress sought to protect and the 'promised . . . defined pension benefit' that the Supreme Court has sought to protect." *Shaw v. Int'l Ass'n of Machinists and Aerospace Workers Pension Plan*, 750 F.2d 1458, 1465-66 (9th Cir. 1985).

The language of the Plan in this case is consistent with the statutory definition of "accrued benefit," and this Plan language, together with its consistency with the statute, is dispositive of the issue before us. The Plan begins by defining accrued benefit to mean "generally the annual pension benefit provided under the Plan commencing at Normal Retirement Age." The language becomes more specific when stating in its description of eligibility conditions and benefit amounts in § 5.01 that "[e]ntitlement of an eligible Participant to receive pension benefits is subject to his retirement and application for benefits, as provided in Article 9." In the same vein, § 5.12 of the Plan provides that "[t]he pension to which a Participant is entitled *shall be determined under the terms of the Plan as in effect at the time the Participant separates from Covered Employment*, based on the actual Pension Credit he had accrued and the Contribution Rates at which he had worked prior to such separation, as determined under the applicable provision of the Plan" (emphasis added). The Plan thus states quite clearly that retirement benefits are determined by the terms in effect "at the time the Participant separates" from service, and benefits added after the employee has retired therefore cannot be part of the "accrued benefit" for that employee under the terms of this Plan. Thus, if an employee separated from covered employment by retirement at a time when the Plan did not make any provision for a COLA benefit, then the COLA benefit did not become part of that employee's "accrued benefit" under the Plan.

Applying our interpretation of the statute and the Plan to the specific circumstances before us in this appeal, we observe that employees who retired before 1991 were never promised a COLA benefit by the Plan in existence during their service, and they had no reason to

expect that the Plan would provide a COLA during retirement. They retired with the fulfillment of the promise for an "annual benefit commencing at normal retirement age" but without a COLA. When, after they were separated from employment by retirement, they were given a COLA benefit, the benefit could not have been an "accrued benefit" because it did not accumulate during their service so as to become part of their legitimate expectations at retirement under the terms of the Plan then in effect. It was a gratuitous benefit provided to them after retirement which could therefore be withdrawn without impairing the promised benefit that had accrued at their retirement. Accordingly, we agree with the Tax Court, which held that the withdrawal of the COLA benefit from the participants who retired before 1991 was not inconsistent with the anti-cutback rule set forth in 26 U.S.C. § 411(d)(6). *Accord Scardelletti v. Bobo*, 1997 WL 33446689, at *10 & n.7 (D. Md. Sept. 8, 1997).

The IRS concedes that ERISA and the Tax Code do not require that a qualified plan contain a COLA. The IRS argues, however, that once a plan includes a COLA, it is consistent with the intent and purpose of ERISA that this benefit be protected by the anti-cutback rule. But the IRS cites to no provision of ERISA, the Tax Code, or the Plan to support a notion that this benefit conferred for the first time on a retiree must be considered "vested" or "accrued."

Additionally, the IRS maintains that because such COLA provisions are commonplace, it would only be reasonable to assume that during active service, employees would have had a reasonable expectation that they would receive benefits protected by a COLA after retirement. This argument also fails fundamentally because it is not grounded on any statutory or Plan language. Whether the expectation of a post-retirement COLA benefit is a reasonable expectation can only turn on the provisions of the applicable statute and the terms of the Plan. Indeed, it would be unreasonable to expect a benefit that the Plan does not provide and that ERISA and the Tax Code themselves do not require.

Finally, the IRS argues that its "construction" of the term "accrued benefit" should be favored because ERISA is a "remedial statute" that must be broadly construed to favor Plan participants. *See*, *e.g.*, *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 123 (4th Cir. 1991); *Brink v. DaLesio*, 667 F.2d 420, 427 (4th Cir. 1981). But this

argument too fails for the same reason that it lacks any connection with the language of the statute or the Plan. Moreover, if trustees of ERISA plans knew that providing an additional benefit to already-retired employees for a given year would lock that benefit in as a floor for all future years, they would be less likely to increase benefits gratuitously in years when the plans were particularly flush. Although adopting the IRS' proposed construction would, on the facts of this case, protect the pre-1991 retirees, it could also lead the Plan trustees to avoid providing gratuitous benefits in the future for fear of being locked in perpetually. The creation of this type of harmful incentive is precisely the sort of danger that excessive reliance on the amorphous admonition to construe remedial statutes broadly poses. *See* Antonin Scalia, *Assorted Canards of Contemporary Legal Analysis*, 40 Case W. Res. L. Rev. 581, 581-86 (1989/1990).[2]

Accordingly, we conclude that the COLA benefit granted by the Plan's 1991 amendment was not an "accrued benefit" for pre-1991 retirees. As to those retirees, the COLA was never anticipated as a retirement benefit before their retirement through the promise of either the statute or the Plan in its then-existing form. Because the COLA was not an accrued benefit for these pre-1991 retirees, the trustees did not violate the anti-cutback rule of 26 U.S.C. § 411(d)(6) when they amended the Plan in 1995 to exclude the pre-1991 retirees from the COLA.

*AFFIRMED*

---

[2]The IRS' reliance on *Hickey v. Chicago Truck Drivers Union*, 980 F.2d 465 (7th Cir. 1992), and *Shaw v. International Ass'n of Machinists and Aerospace Workers Pension Plan*, 750 F.2d 1458 (9th Cir. 1985), is misplaced, as both are distinguishable. In *Hickey*, the court held that a COLA, which had long been included in a plan, was an accrued benefit for participants denied that COLA when the plan was terminated without any provision for funding future COLA obligations. And in *Shaw*, the court held simply that a provision for a "living pension" adjustment, which made benefits competitive with existing employee-compensation rates, was an accrued benefit. In neither case did the court address whether the benefit would have become an accrued benefit for retirees who were first given the benefit after separation from service by retirement.