In the

# United States Court of Appeals

### For the Seventh Circuit

No. 05-1535

JOHN G. SILVERNAIL,

*Plaintiff-Appellant,*

*v.*

AMERITECH PENSION PLAN and
AMERITECH CORPORATION,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 03 C 3291—**Richard Mills**, *Judge.*

ARGUED NOVEMBER 30, 2005—DECIDED FEBRUARY 27, 2006

Before ROVNER, WOOD, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* John Silvernail worked for Ameritech, then known as the Illinois Bell Telephone Company, for almost 11 years, from February 1967 to January 1978. He was 18 years old when he started and 29 when he left. Based on these years of service, Silvernail, who is now 57, believes the company will owe him a pension when he turns 65.

Silvernail began trying to nail down his entitlement to benefits in 1999. He has lost at every step along the way and is here today appealing the district court's granting of the defendants' (Ameritech Corporation and the

Ameritech Pension Plan) motion to dismiss. Resolving the appeal requires a trip through the history of the plan (we'll call it the Illinois Bell Plan, the name at the time Silvernail was an employee).

Illinois Bell's pension plan evolved during Silvernail's tenure, most significantly when Congress passed the Employee Retirement Income Security Act (ERISA) in 1974. As the district court interpreted the relevant statutes and Illinois Bell policies, Silvernail never met the vesting requirements for any pension. Silvernail presses his case on appeal, basing his arguments mostly on what he believes Congress intended when it wrote ERISA, as opposed to what Congress actually said.

Under Illinois Bell's pension plan as amended in 1967, shortly after Silvernail began working there, pension eligibility was based on years of employment, either alone or in some combination with age. Both sides agree that Silvernail's relatively brief employment at a young age would not have qualified him for a pension under the 1967 plan.

Illinois Bell amended its plan in 1969, creating a "deferred service" pension. Under the terms of that plan, an employee who reached the age of 40, had worked for the company for at least 15 years, and subsequently left Illinois Bell, would get a pension when he reached age 65. Again, Silvernail earned no vested rights to a pension under this plan.

Congress's passage of ERISA prompted Illinois Bell to make another round of changes to its plan in 1976. First, the company adopted "cliff vesting," under which an employee became vested all at once upon completion of 10 years service, as opposed to vesting gradually. Second, the company shortened the vesting period for deferred service pensions from 15 years to 10 years and began counting

years of service completed after age 22.[1] Thus, Silvernail, who turned 22 in September 1970, clearly would have become eligible for a deferred service pension had he worked for Illinois Bell until September 1980, rather than leaving in 1978.

Silvernail's claim that he actually did qualify under 10-year cliff vesting focuses on the ERISA provision that allows such plans to disregard an employee's service before age 22. In essence, Silvernail seeks the benefit of the 1976 Illinois Bell plan changes, which shortened vesting from 15 to 10 years, but thinks his vesting period should have begun not at age 22, as the 1976 plan (tracking ERISA) provided, but rather when he began his employment at age 18.

The district court dismissed Silvernail's claim, finding that Ameritech had not wrongfully denied Silvernail's claim for benefits. Since it assumed that the company had acted under its discretionary authority as plan administrator to determine eligibility, the district court applied an "arbitrary and capricious" standard of review. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 114 (1989); *Wilczynski v. Kemper Nat'l Ins. Cos.*, 178 F.3d 933, 934 (7th Cir. 1999). However, we interpret Silvernail's arguments not as a claim that the plan administrator made a mistake, but as a claim that the terms of Illinois Bell's plan violate ERISA. This is a question of law, and our review is *de novo*. *Small v. Chao*, 398 F.3d 894, 897 (7th Cir. 2005).

Silvernail contends that the section of ERISA regarding years of service before age 22, § 203(b)(1)(A),[2] is "latently

---

[1] By contrast, the 1969 plan for deferred service pensions effectively disregarded years of service before age 25, since it required both a minimum of 15 years tenure and attainment of the age of 40.

[2] ERISA has been amended several times, and the text of its
(continued...)

ambiguous and therefore requires other extrinsic evidence to know the legislative intent." Section 203(b)(1) stated that in computing the period of service for determining an employee's nonforfeitable pension benefit,

> all of an employee's years of service with the employer or employers maintaining the plan shall be taken into account, except that the following may be disregarded:
>
>> (A) years of service before age 22, except that in the case of a plan which does not satisfy subparagraph (A) or (B) of subsection (a)(2), the plan may not disregard any such year of service during which the employee was a participant[.]
>>
>> . . . .

Subsection (a) stated in pertinent part:

> (a) Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age and in addition shall satisfy the requirements of paragraphs (1) and (2) of this subsection.
>
> . . . .
>
> (2) A plan satisfies the requirements of this paragraph if it satisfies the requirements of subparagraph (A), (B), or (C).
>
>> (A) A plan satisfies the requirements of this subparagraph if an employee who has at least 10 years of service has a nonfor-

---

[2] (...continued)
current codification differs from the law in effect at the time of Silvernail's employment. Thus, to avoid confusion, we cite to the sections of the original ERISA law. *See* Pub. L. No. 93-406, 88 Stat. 829 (1974).

feitable right to 100 percent of his accrued benefit derived from employer contributions. [Subparagraphs (B) and (C) are not relevant to Silvernail's claim.]

Section 203(a)(2)(A) is a description of 10-year cliff vesting pensions. Since Illinois Bell's 1976 plan satisfied this subparagraph, § 203(b)(1)(A) allowed the company to disregard years of service before age 22. Despite Silvernail's protestations to the contrary, there is nothing ambiguous, latently or otherwise, about these provisions.

Attempting to spin an interpretation that might help him, Silvernail insists that in order to understand the true meaning of § 203, it is necessary to also consult "extrinsic evidence" from congressional committee reports, legislators' floor statements, federal regulations, and case law. But this we are not free to do, since the language is neither ambiguous nor in conflict with some other part of the statute that is necessary to resolve this case. "The basic rule in statutory interpretation is that plain statutory language governs." *Nestle Holdings, Inc. v. Cent. States, S.E. & S.W. Areas Pension Fund*, 342 F.3d 801, 804 (7th Cir. 2003). The Supreme Court has repeatedly explained that ERISA is a "comprehensive and reticulated statute, the product of a decade of congressional study . . . ," *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (citation and internal quotation marks omitted), and we have understood this to mean that courts should take care to interpret ERISA strictly according to its plain language, *Nestle*, 342 F.3d at 805. *See also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: `judicial inquiry is complete.'" (citations omitted)). Even if we were inclined to agree with Silvernail that his interpretation of the vesting rules "is consistent

with ERISA's overall purpose," the Supreme Court reminds us that, especially when it comes to ERISA, "vague notions of a statute's basic purpose are . . . inadequate to overcome the words of its text regarding the specific issue under consideration." *Great-West*, 534 U.S. at 220 (citation, emphasis, and internal quotation marks omitted).

In any case, the citations to outside authorities that Silvernail offers do not help him, because they appear to consist mostly of short, highly selective snippets that have been taken out of context. For example, his brief quotes the following from a House committee report: "Years of service prior to the effective date [of ERISA] also are to be counted for purposes of determining the extent to which the employee is entitled to vesting." *See* House Rep. No. 93-807 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 4670, 4723. The report goes on to describe how, for example, an employee who was 30 when he joined a company plan and 40 when ERISA became law would retain credit for 10 years service. But Silvernail's citation of this sentence to bolster his argument is misplaced, because the surrounding text makes clear that this discussion in no way affects other parts of the bill that authorize plans to disregard service before a certain age. *See id.* at 4722-24. Such use of authority amounts at best to sloppy lawyering, and at worst it is an attempt to mislead us. In any case, other parts of the legislative history make clear that Congress did indeed intend to allow employers to disregard service before age 22 for 10-year cliff vesting plans. *See*, *e.g.*, H.R. Conf. Rep. No. 93-1280 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 5038, 5050 ("Generally, [a pension] plan may also ignore service performed before age 22.")

Even though ERISA's language is unambiguous, Silvernail believes that Congress did not intend the provision regarding service before age 22 to apply "retroactively" to employees who had begun working at a younger age before ERISA became law. In support of his belief that new

terms amended into a plan "could only be applied prospectively," Silvernail relies on *Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739 (2004).

*Heinz*, which concerned a vested pensioner who was already receiving benefits, interpreted ERISA's "anti-cutback rule" to prohibit a change in terms to a pension plan that would have eliminated or reduced a benefit *already earned*. *See id*. at 741-44. This case is not applicable to the situation before us. Silvernail apparently confuses a policy amendment that reduces a worker's actual accrued benefits, which was the issue in *Heinz* and which ERISA prohibits, with an amendment that changes how an employee becomes vested. He believes, mistakenly, that since Illinois Bell was all the while paying into a pension trust fund on his behalf, denying him vesting credit between ages 18 and 22 was tantamount to depriving him of benefits he had earned during those years. Benefit accrual and vesting are related but different concepts. "Vesting provisions do not affect the amount of the accrued benefit, but rather govern whether all or a portion of the accrued benefit is nonforfeitable." *Hoover v. Cumberland, Md., Area Teamsters Pension Fund*, 756 F.2d 977, 983-84 (3rd Cir. 1985).

Silvernail cannot pick and choose among terms of the 1976 plan, claiming the benefit of provisions that help him while arguing that the company has no right to apply provisions that cut against him. Since he had not yet vested and thus could claim no nonforfeitable right to any benefits, the 1976 amendments did not "retroactively" deprive Silvernail of anything to which he had legal entitlement.

If Silvernail is a victim in any sense, he may have been a victim of congressional compromises that allowed companies to disregard some service when employees were very young in exchange for reforms that improved the pension system overall. There is no evidence that Illinois Bell used the ERISA changes to thwart employ-

ees' legitimate expectations. Moreover, as defendants note (and Silvernail does not dispute), Illinois Bell's policy went an extra step by allowing an employee to use, in lieu of the 1976 plan, any rule of eligibility previously in effect during any part of his employment. And so if Silvernail wanted to avoid the "retroactive" effects of the 1976 plan, he had the option of remaining under the rules of the 1967 or 1969 plans. But of course those plans were less advantageous. Apparently, the only one that began counting service from age 18 was the 1967 plan—but under that option, Silvernail would have had to work for the company for at least 30 years.

Finally, Silvernail believes that where ERISA refers to a "participant," it means someone with a separate, more protected status than a mere "employee." He argues that although he never became vested, he was already a participant in the Illinois Bell plan when the 1976 changes went into effect (presumably because the company was making contributions to the plan on his behalf), and sees this as another reason why the exclusion of service before age 22 could not be applied to him "retroactively." However, ERISA's definitions section indicates that participants are a subset of employees, not a separate group. *See* § 3(6)-(7). Thus, even if Silvernail was a participant in the Illinois Bell plan, the plain language of § 203(a)-(b), allowing 10-year cliff vesting plans to disregard the service of an "employee" before age 22, encompassed him.

The judgment of the district court is AFFIRMED.

No. 05-1535 9

A true Copy:

     Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*