**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2752
_____

PHILLIP C. ENGERS; WARREN J. MCFALL; DONALD G. NOERR;
GERALD SMIT, individually and on behalf of all others similarly situated,

Appellants.

v.

AT&T, INC.; AT&T PENSION BENEFIT PLAN, AND
AT&T PUERTO RICAN PENSION BENEFIT PLAN

On Appeal from the United States District Court
for the District of New Jersey
(D. C. No. 2-98-cv-03660)
District Judge:  Honorable Stanley R. Chesler

Argued on March 17, 2011

Before:  BARRY, CHAGARES and ROTH, <u>Circuit Judges</u>

(Opinion filed : June 22, 2011)

Maureen S. Binetti, Esquire
Wilentz, Goldman & Spitzer
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, NJ   07095-0958

Stephen R. Bruce, Esquire **(Argued)**
Allison C. Pienta, Esquire
805 15th Street, N.W.
Suite 210
Washington, D.C.   20005-2271

Jonathan I. Nirenberg, Esquire
Resnick & Nirenberg
100 Eagle Rock Avenue
Suite 301
East Hanover, NJ   07936

Edgar Pauk, Esquire
27 Eight Avenue
Brooklyn, NY   11217

Counsel for Appellants


David W. Carpenter, Esquire **(Argued)**
Laura D. Rottenborn, Esquire
Jeffrey R. Tone, Esquire
Sidley Austin LLP
One South Dearborn Street
Chicago, IL   60603

Patricia S. Robinson, Esquire
Fisher & Phillips, LLP
430 Mountain Avenue
Murray Hill, NJ   07974

Counsel for Appellee

Mary E. Signorille, Esq.
AARP Foundation Litigation
601 E Street, N.W.
Washington, DC 20049-0000

Counsel for Amicus Appellant

---

O P I N I O N

---

**ROTH**, <u>Circuit Judge</u>:

## I. Introduction

Engers and several other AT&T employees (collectively, Engers) appeal several orders of the District Court granting summary judgment on their claims against AT&T under the Age Discrimination in Employment Act (ADEA) and the Employee Retirement Income Security Act (ERISA). In 1998, Engers brought a class action against AT&T, alleging that changes to its Management Employees' Pension Plan (the Plan) in April 1997 disproportionately harmed older employees in violation of the ADEA, and violated ERISA's disclosure, anti-backloading, and anti-cutback rules. After extensive discovery and over a decade of litigation, the District Court granted summary judgment to AT&T on all of Engers's claims. Engers contends on appeal that the District Court misinterpreted the ADEA and several ERISA provisions and mistakenly concluded that certain of his claims had not been adequately pleaded. For the reasons that follow, we will affirm.

## II. Background

Because we write for the parties, we assume familiarity with the facts in this case as set out in previous opinions of the District Court, and only briefly summarize them here.[1] Prior to its amendment in April 1997, the Plan provided participants with a pension based on their average pay over a "pay base averaging period" and in each subsequent year. The Plan also provided generous early retirement subsidies, which

---

[1] *See Engers v. AT&T, Inc.*, No. 98-3660, 2010 WL 2326211 (D.N.J. June 7, 2010); *Engers v. AT&T Corp.*, No. 98-3660, 2006 WL 3359722 (D.N.J. Nov. 20, 2006); *Engers v. AT&T*, 428 F. Supp. 2d 213 (D.N.J. 2006); *Engers v. AT&T*, No. 98-3660, 2002 WL 32159586 (D.N.J. Oct. 17, 2002).

permitted participants to retire as early as age 55 and receive their full pensions. In April 1997, AT&T amended the Plan to phase out the early retirement subsidy and replace the pay-average formula with a cash balance system, under which each participant would be assigned a hypothetical cash balance which would be increased by pay and interest credits for each year of service.[2] However, there were no generous early retirement subsidies for benefits accruing under the cash balance plan – instead early retirement benefits were actuarially reduced to account for the fact that the participant's cash balance was being distributed over a longer period of time. To mitigate the effect of these changes on older plan participants, the Plan amendments created a frozen "special update" benefit, which provided a significant, one-time increase to each participant's benefits, and was also subject to the generous early retirement subsidies available under the old Plan.[3] To ensure that participants' benefits were not reduced, the amended Plan provided that retiring participants were entitled to the greater of (1) their benefits accrued under the old Plan, (2) the frozen special update benefit (both of which had generous early retirement subsidies) or (3) their gradually increasing cash balance benefits (which did not have any early retirement subsidy).

One implication of the Plan amendments was that many older Plan participants experienced 7-8 years of "wear-away," a period during which their cash balance would

---

[2] The Plan document was revised and restated on October 20, 2000 to incorporate the April 1997 amendments.

[3] The Plan amendments actually made early retirement benefits more generous in some respects by eliminating age and service requirements that had prevented employees from receiving early retirement benefits before age 50.

grow, but their early retirement benefits would not increase because the actuarially discounted value of the cash balance account would be less than the subsidized early retirement benefit from the frozen special update benefit.[4] Although AT&T was concerned that wear-away would be poorly received by employees, it distributed several documents explaining the Plan amendments and created a website so that each participant could calculate his or her benefits, and determine when his wear-away period would end, which AT&T called "crossover."

Engers and several other AT&T management employees brought a class action against AT&T, alleging, *inter alia*, that (a) the wear-away periods were disproportionately longer for older plan participants, violating the ADEA; (b) key features of the new Plan had not been included in the Plan amendments, in violation of the written instrument requirement of ERISA § 402(a)(1); (c) AT&T had not adequately disclosed the implications of the Plan amendments to plan participants, in violation of its fiduciary duties and ERISA §§ 102 and 204(h); (d) the shift to a cash balance formula violated the anti-backloading rule of ERISA § 204(g)(2); and (e) the discounting of early retirement benefits received before age 50 violated the anti-cutback rule of ERISA § 204(b). Over the course of 12 years of litigation, the District Court granted summary judgment on all of Engers's claims, resulting in this appeal.

---

[4] Recall that participants are entitled to the greater of their special update or cash balance benefits.

## III. Discussion

"We review de novo district court orders granting or denying summary judgment," *Elassaad v. Independence Air, Inc.*, 613 F.3d 119, 124 (3d Cir. 2010), "apply[ing] the same test required of the district court and view[ing] inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party." *Bayer v. Monroe Cnty. Children & Youth Servs.*, 577 F.3d 186, 191 (3d Cir. 2009). Our review is not limited to the reasoning of the court below and we "may affirm the district court on grounds different from those relied on by the district court."[5] *In re Mushroom Transp. Co.*, 382 F.3d 325, 344 (3d Cir. 2004).

### A. The ADEA Claim

Engers's ADEA claim is that the 1997 amendments discriminated against older employees because they resulted in longer wear-away periods for older employees. ADEA § 4(i)(1) sets out specific rules governing age discrimination relating to retirement benefits and Engers does not contest the District Court's conclusion that the Plan amendments complied with these rules. *Engers,* 2010 WL 2326211 *4-5 (citing *Register v. PNC Fin. Servs. Grp., Inc.*, 477 F.3d 56, 68 (3d Cir. 2007)). The court found that Engers' wear-away claims related to benefit accrual, and were therefore barred by ADEA § 4(i)(4), which provides – both now and in 1997 – that "[c]ompliance with the requirements of this subsection with respect to an employee pension benefit plan shall

---

[5] The District Court had jurisdiction under 28 U.S.C. § 1331 and we have jurisdiction under 28 U.S.C. § 1291.

6

constitute compliance with the requirements of this section relating to benefit accrual under such plan." *Engers,* 2010 WL 2326211, *4 (quoting 29 U.S.C. § 623(i)(4)).

On appeal, Engers argues that the District Court erred in treating compliance with ADEA § 4(i) as a complete defense to his ADEA claims.[6] He contends that amendments in 1990 changing the scope of ADEA § 4(a)(1) brought his wear-away claims within that subsection and outside the scope of ADEA § 4(i). We agree with the Tenth Circuit's careful analysis of this argument and its conclusion that the 1990 amendments do not affect the scope of ADEA § 4(i). *See Jensen v. Solvay Chemicals, Inc.*, 625 F.3d 641, 660-61 (10th Cir. 2010). Engers does not seriously contest the District Court's ruling that his wear-away claims "relat[e] to benefit accrual" and we conclude that this ruling was correct. *See Hurlic v. S. Cal. Gas Co.*, 539 F.3d 1024, 1037 (9th Cir. 2008) (wear-away claims relate to benefit accrual). Accordingly, Engers's wear-away claims are barred by the plain language of ADEA § 4(i)(4).

## B.  The Plan Amendment Claims

Some procedural background is necessary to understand Engers's Plan amendment claims. In October 2004, Engers moved for summary judgment on these claims, arguing that two key changes to the Plan were not included in the Plan amendments and had not been validly adopted until they were included by AT&T in a restatement of the Plan in October of 2000. As a result, these changes could not be retroactively applied to

---

[6] We reject Enters's argument that he pleaded a disparate treatment claim and that this claim is not precluded by ADEA § 4(i)(4). Even if this claim was properly pleaded, it would arise under ADEA § 4(a), and thus be barred by ADEA § 4(i)(4), which by its terms applies to any claim under section 4. *See* 29 U.S.C. § 623(i)(4).

determine benefits during 1997-2000. Engers therefore interpreted the 1997 amendments as entitling participants to (1) the sum of their benefits payable under the special update and the cash balance formula, and (2) additional benefit payment options – a lump sum payment and a joint and 100% survivor annuity – for their special update benefits as well as their cash balance benefits. The District Court found that these claims were unexhausted claims for plan benefits and dismissed them without prejudice. *Engers*, 428 F. Supp. 2d at 227-31.

In 2006, Engers presented his claim to AT&T's Benefits Committee, which denied it. In a detailed opinion, the Committee explained that the text of the amendments and related documents were inconsistent with Engers's proposed interpretation. Concerning Engers's first argument, the Committee pointed out that, because the initial amount in each participant's cash balance account is based on the special update, awarding Engers the sum of his special update and cash balance benefits would essentially give him double benefits. Additionally, presentations to AT&T's Board when it was considering the Plan amendments and disclosures to employees immediately following the amendments made clear that participants were entitled to the greater of their cash balance and special update benefits. Regarding Engers's second argument, the Committee noted that the plain language of the amendments indicates that the new benefit payment options apply only to the cash balance benefit, and that communications to employees immediately following the amendments made this point explicit.

In October 2007, Engers was permitted to file an amended complaint reasserting his Plan amendment claims because they had been properly exhausted. AT&T moved for

8

summary judgment on these claims and Engers argued, again, that key features of the new Plan were not validly adopted by the Plan amendments. The District Court dismissed Engers's claims, finding that his arguments represented an "entirely new legal theory" that had not been pleaded in the complaint. *Engers*, 2010 WL 2326211, *5-6. We agree with Engers that his arguments did not present an entirely new theory and that, in any case, he was not required to plead his legal theory in his complaint. *See Skinner v. Switzer*, 562 U.S. __, 131 S. Ct. 1289, 1296 (2011).

As it is not clear whether the District Court reached the merits of Engers's amendment claims, we address them here. Engers does not contest that the Plan amendments were validly adopted and thus part of the Plan—rather, he argues that the amendments are not properly construed as establishing the greater-of rule and limitations on certain benefit options. Because the Committee had discretionary authority to construe the Plan, we review its interpretation of the Plan amendments for abuse of discretion.[7] *See Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 844-45 & n.2 (3d Cir. 2011). We find that the Committee did not abuse its discretion in denying either of Engers's claims. First, the Committee reasonably concluded that the Plan amendments did not provide participants with double benefits. The only evidence Engers offers in support of his reading of the amendments is the testimony of Brian Byrnes, AT&T's Human Resources director, who acknowledged that, regarding whether participants could receive

---

[7] Because Engers's claim arose in the context of litigation, an argument can be made that the Committee had conflicting interests when ruling on the claim, which is a factor relevant to the abuse-of-discretion analysis. *See Miller*, 632 F.3d at 845 & n.3. But Engers does not press this point and, in any case, taking this factor into account would not affect the outcome in this case.

the sum of their special update and cash balance benefits, the board "didn't say you could. They didn't say you couldn't." He later clarified that providing the sum of the two benefits was inconsistent with the Plan's design. This testimony shows at most that the language of the Plan amendments was ambiguous. It does not show that the Committee resolved that ambiguity incorrectly, and Engers does not address the Committee's arguments for its interpretation, which are eminently reasonable. Engers offers no evidence for his second claim regarding benefit payment options, and we agree with the Committee that the plain language of the Plan amendments precludes his claim. Accordingly, AT&T was entitled to summary judgment on Engers's Plan amendment claims.

## C. The Disclosure Claims

Engers claims that AT&T's disclosures regarding the amended Plan violated three different ERISA provisions.

*1. Disclosure of Benefit Reduction Under ERISA § 204(h).* Engers's first claim is that AT&T failed to provide adequate advance notice to participants that the Plan amendments "provide[d] for a significant reduction in the rate of future benefit accrual" as required by ERISA § 204(h), 29 U.S.C. § 1054(h). The District Court found that this claim was governed by Treasury regulations interpreting ERISA § 204(h), which provide that "an amendment to a defined benefit plan affects the rate of future benefit accrual only if it is reasonably expected to change the amount of the future annual benefit commencing at normal retirement age." 26 C.F.R. § 1.411(d)-6T, Q&A-5, 60 Fed. Reg. 64,320, 64,322 (1995). Because even Engers's expert calculated that retirement benefits

10

available at normal retirement age would be higher under the cash balance formula or special update formula than under the prior plan formula, the court found that AT&T had complied with the regulation and was entitled to summary judgment. *Engers*, 428 F. Supp. 2d at 221-22; *Engers*, 2006 WL 3359722, *2-3. Engers argues that the District Court should not have considered the combined effect of the special update and cash balance formulae when determining whether the Plan amendments resulted in a significant reduction in benefit accruals. Even if this were true, Engers does not show that either formula considered separately would result in lower normal age retirement benefits than those under the old Plan, and his own expert's report shows the opposite.[8] The District Court therefore correctly granted summary judgment on this claim.

*2. Adequacy of Summary Plan Description Under ERISA § 102(a).* Engers's next claim is that AT&T's disclosures explaining the Plan amendments and summary plan description (SPD) describing the amended plan violated ERISA § 102(a) because they were not "written in a manner calculated to be understood by the average plan participant, and . . . sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. 1022(a). The District Court found that Engers could not recover on this claim because he had failed to show "extraordinary circumstances" such as "'circumstances . . . where the employer has acted in bad faith, or has actively concealed a change in the benefit plan,

---

[8] The expert's calculation of the special update benefit inaccurately states the value of the special update benefit because it is based on his mistaken view that the special update benefit should not be frozen but should be treated as an increasing benefit. However, the Plan amendments and Plan document make clear that the special update benefit is frozen and does not increase.

11

and the covered employees have been substantively harmed by virtue of the employer's actions.'" *Engers*, 428 F. Supp. 2d at 239 (quoting *Ackerman v. Warnaco, Inc.*, 55 F.3d 117, 125 (3d Cir. 1995)). Engers contends on appeal that he offered sufficient evidence that AT&T actively concealed certain features of the Plan amendments and that the District Court did not properly apply the summary judgment standard to consider the evidence in the light most favorable to him.[9]

We disagree. At most, Engers's evidence shows that AT&T was concerned that the possibility of crossover or wear-away would "undercut[] Cash Balance if highlighted or placed in front" and did not want to "tell the bad parts upfront." But regardless of any

---

[9] Engers also argues that he was not required to establish extraordinary circumstances under *Burstein v. Retirement Account Plan,* because in that case we permitted an employee to recover benefits misleadingly promised by an SPD without requiring a showing of extraordinary circumstances. 334 F.3d 365, 376-80 (3d Cir. 2003). This confuses two different claims considered in *Burstein*. We did not require the plan participant in *Burstein* to show extraordinary circumstances to recover benefits promised in the SPD under ERISA § 502(a)(1)(B). *See id.* But we did require the participant to show extraordinary circumstances to recover on a separate equitable estoppel claim under ERISA § 502(a)(3). *See id.* at 383. Because Engers seeks equitable relief, and not a benefit promised him in his SPD, he must show extraordinary circumstances.

*CIGNA Corp. v. Amara*, 562 U.S. __, 131 S. Ct. 1866 (2011), does not alter this conclusion. There the Court held that a showing of "detrimental reliance" is not necessary for all forms of equitable relief under § 502(a)(3). *Id.* at 1880-82 ("Information-related circumstances, violations, and injuries are potentially too various in nature to insist that harm must always meet that more vigorous 'detrimental harm' standard when equity imposed no such strict requirement.") However, the Court expressly declined to address "other prerequisites" for equitable relief, *id.* at 1883, and thus we see no reason to depart from our longstanding rule that an equitable estoppel claim under § 502(a)(3) cannot be based merely on "simple ERISA reporting errors or disclosure violations, such as a variation between a plan summary and the plan itself, or an omission in the disclosure documents," without a showing of extraordinary circumstances. *Burstein*, 334 F.3d at 383 (quoting *Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544, 1553 (3d Cir. 1996)) (emphasis deleted).

reluctance, AT&T provided multiple disclosures describing clearly and in detail the possibility of wear-away. For example, a letter sent to participants only weeks after the Plan amendments were adopted illustrated wear-away by providing examples of the benefits that two hypothetical employees retiring in 1997 – one under age 55 and one over age 55 – would receive under the amended Plan, and informed employees that "if you are within 7 years of retirement eligibility under the current plan, your special update will most likely provide a greater benefit than the cash balance feature." Additionally, AT&T created a pension website that enabled participants to see their cash balance accounts and identified their "crossover year – when your single life annuity (SLA) under Cash Balance exceeds your SLA under your prior accrued pension benefit."

Engers also points to evidence that AT&T deliberately avoided comparing benefits under the new Plan to benefits under the old Plan. But as the District Court explained, the comparison insisted upon by Engers would have been misleading. *Engers*, 428 F. Supp. 2d at 242-43. As it stood prior to amendment in April 1997, the old Plan would provide fewer benefits to employees than the new Plan. The comparison that Engers contends would show that the new Plan reduced benefits was based on the assumption that AT&T would continue its prior practice of amending the old Plan's pay average formula to allow employees to benefit from larger salaries (which AT&T was under no obligation to do). But AT&T did not intend to continue that practice – that was why it adopted the Plan amendments. Even if AT&T should have compared benefits under the old and new plans (a comparison favorable to the new Plan), it certainly was not required to compare benefits under the new Plan to what they might have been had AT&T decided

13

to keep updating the pay average formula.[10]  We conclude that AT&T's disclosures were adequate and that no reasonable jury could conclude that AT&T actively concealed wear-away or other key plan features from participants.  Summary judgment for AT&T on this claim was therefore proper.

>    3. ***Breach of Fiduciary Duty to Inform Participants.***  Engers's final disclosure claim is that AT&T breached its fiduciary duty to provide material information to participants, and specifically that it failed to inform participants of the differing values of optional benefit forms available under the Plan.  The District Could held that because Engers had "the ability to proceed under [ERISA] § 502(a)(1)(B) for Defendants' alleged violation of [ERISA] § 102," he not could not obtain "appropriate equitable relief" under ERISA § 502(a)(3).  *Engers*,  428 F. Supp. 2d at 235-36 (citing *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996)).  AT&T does not defend this conclusion and we agree with Engers that the District Court erred.  As we have explained above, Engers's allegations that AT&T's 1998 SPD did not comply with ERISA § 102 cannot support a claim for benefits under ERISA § 502(a)(1)(B) because he does not seek benefits promised to him in the SPD.  *See supra* n.9.  Rather, Engers can only obtain equitable relief under ERISA § 502(a)(3) for AT&T's alleged breach of ERISA § 102.  The District Court did not consider whether the availability of one type of equitable relief under § 502(a)(3) should preclude other types of equitable relief under the same subsection, and our precedent suggests the contrary.  *See, e.g.*, *Burstein* 334 F.3d at 370-71, 385-87 (considering merits

---

[10] Moreover, AT&T's practice of updating the formula was inconsistent, and we see no objective way for AT&T to predict how it would have made changes to the formula that it did not intend to make.

of fiduciary duty claim after affirming dismissal of equitable estoppel claim). Accordingly, Engers's fiduciary duty claim was not barred under *Varity*.

However, we will affirm judgment for AT&T on Engers's fiduciary duty claim because it has not been adequately pleaded. The Complaint alleges only that AT&T breached its fiduciary duty by failing to disclose "the disadvantages of the 'new' cash balance features and transitional provisions, compared to the 'old' defined benefit plan," and contains no allegations regarding the relative value of various benefit options that are available under the cash balance plan. But in this appeal and at least since 2003, Engers has advanced a different argument that AT&T failed to disclosed the "relative values" of benefit payment options (*i.e.*, different types of annuities, or a lump sum payment) available from the cash balance benefit, and that AT&T "misrepresent[ed] . . . that the 'overall value' of the options was the same."[11] This argument "fails at the most basic level because it finds no support in the plain language of [Engers's] complaint." *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 459 (3d Cir. 2003). Engers has amended his complaint several times during the decade of litigation before the District Court but has never sought leave to include a claim concerning AT&T's disclosure of the relative value of benefit options. Because Engers has failed to plead this claim, we will not now consider it on appeal. *See id.*

_____

[11] Engers does not mention on appeal his original breach of fiduciary duty claim predicated on AT&T's alleged failure to adequately inform plan participants about wear-away and provide a comparison between benefits under the old Plan and the new Plan. Even if these claims are not waived, for the reasons we have set out above, there is no genuine issue of material fact about the adequacy of AT&T's disclosures on these points, and summary judgment on this claim was proper.

15

## D. The Anti-Backloading Claim

Engers claims that wear-away resulting from the Plan amendments violates the anti-backloading rule of ERISA § 204(b), because participants' benefit accrual rates in later plan years are more than 133 1/3% of the benefit accrual rate during the wear-away period, which he claims was zero. *See* 29 U.S.C. § 1054(b)(1)(B). The District Court rejected this argument because even though early retirement benefits do not increase during wear-away, participants' cash balance accounts continue to increase. *Engers*, 2010 WL 2326211, *7-9 (citing *Register*, 477 F.3d at 72). Engers argues that accrual of early retirement benefits rather than cash balance amounts should be considered in applying the anti-backloading rule. He points out that the anti-backloading rule applies to the accrual rate of benefits that are "payable," which in his view refers to benefits that are immediately payable to a plan participant, *i.e.*, early retirement benefits. But the plain language of ERISA § 204(b) refutes this argument: the anti-backloading rule applies to "the annual rate at which any individual who is or could be a participant can accrue the retirement benefits *payable at normal retirement age* under the plan." 29 U.S.C. § 1054(b)(1)(B) (emphasis added); *see also id.* § 1054(b)(1)(B)(iii) (in applying anti-backloading rule "the fact that benefits under the plan may be payable to certain employees before normal retirement age shall be disregarded"). Additionally, the statute provides that, in applying the anti-backloading rule, "any amendment to the plan which is in effect for the current year shall be treated as in effect for all other plan years," which means that the transition between the old and new plans and resulting wear-away must be disregarded. *Id.* § 1054(b)(1)(B)(i). The District Court therefore correctly rejected

Engers's anti-backloading claim premised on the accrual rate of participants' early retirement benefits.

### E. The Anti-Cutback Claim

Engers's final claim is that the amended Plan violates the anti-cutback rule of ERISA § 204(g)(2), which prohibits the reduction of accrued benefits or the imposition of greater restrictions on the receipt of accrued benefits. *See* 29 U.S.C. § 1054(g)(2); *Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 744 (2004). Under the old, pre-1997 Plan, participants retiring between ages 50-55 were entitled to receive their age-55 early retirement benefits, reduced by 6% for each year they were retiring prior to age 55. But the Plan's age and service requirements did not permit participants to receive benefits before age 50. The Plan amendments removed the age and service restrictions on receipt of benefits prior to age 50, but provided that, like early retirement benefits taken between ages 50-55, benefits taken before age 50 would be also be reduced by 6% for each year a participant retired before age 55. Engers argues that extension of the 6% per year benefit reduction – which he claims is "actuarially unreasonable" – to benefits available when retiring before age 50 constitutes the imposition of an additional restriction on benefits in violation of the anti-cutback rule.[12]

---

[12] Engers's argument that the 6% per year discount rate is "actuarially unreasonable" has no bearing on the anti-cutback rule. *Berger v. Xerox Corp. Ret. Income Guar. Plan*, 338 F.3d 755, 762 (7th Cir. 2003), on which Engers relies, concerns the requirements of ERISA § 204(c)(3), not § 204(g)(2), and Engers has not appealed the District Court's (correct) conclusion that the 6% yearly reduction does not violate ERISA § 204(c)(3). *See Engers*, 2010 WL 2326211, *9-11.

Engers's argument fails for two reasons. First, prior to the 1997 amendments, participants could not receive any benefits before age 50 and thus had no "'early retirement benefit' that was earned by service before the amendment was passed" and then was improperly reduced. *Heinz*, 541 U.S. at 744. Rather, the Plan amendments simultaneously conferred a right to benefits before age 50 and provided that such benefits would be reduced by 6% for each year that participants retired before age 55. Second, even if participants are considered to have, in some sense, "earned" early retirement benefits before age 50, the Plan amendments did not "impose materially greater restrictions on the receipt of" these benefits and did not reduce benefits payable before age 50. Rather such benefits were increased from nothing to a percentage of the age-55 early retirement benefit. We do not see how "in any practical sense" this change could be "viewed as shrinking the value" of participants' benefits. *Id.* at 745. Summary judgment on Engers's anti-cutback claim was therefore proper.

## IV. Conclusion

For the reasons set out above, we will affirm the orders of the District Court granting summary judgment to AT&T on all of Engers's claims.