REINHARDT, Circuit Judge,
dissenting:
I have considerable doubt as to whether Xilinx, Inc. (“Xilinx”) and Xilinx Ireland allocated the costs associated with employee stock options in a manner that can be characterized as an arm’s length result. I will assume, however, that the tax court correctly resolved that issue. If so, there is clearly a conflict between the arm’s length regulation codified at 26 C.F.R. § 1.482-1(b)(1), which applies to all transactions between controlled parties, and the “all costs” regulation codified at § 1.482-7A(d)(1), which applies only to cost-sharing arrangements between controlled parties.[1] I continue to believe that, as a matter of law, the “all costs” regulation, as the specific of the two provisions, the one designed to deal specifically with the type of question before us, controls. I would therefore reverse the tax court’s ruling that the Commissioner’s proposed allocation was arbitrary and capricious for the reasons explained in our opinion, Xilinx Inc. v. CIR, 567 F.3d 482 (9th Cir.2009), withdrawn on January 13, 2010 in anticipation of the issuance of Judge Noonan’s and Judge Fisher’s new opinions, supra.
I agree with the majority that the canons of construction “are not mandatory rules,” and that their interpretive force can be overcome by other circumstances evidencing legislative intent. Maj. op. at 1196 (quoting Chickasaw Nation v. United States, 534 U.S. 84, 94, 122 S.Ct. 528, 151 L.Ed.2d 474 (2001)). Such circumstances, however, are not present here. Contrary to the majority’s assertions, the conflict between the arm’s length provision and the “all costs” requirement cannot be resolved by looking to the purpose of the regulations or to Treasury’s Technical Explanation of the 1997 United States-Ireland Tax Treaty. Judge Fisher also looks to the understanding of the multinational corporations and their business and tax advisors, a dubious practice for which he cites no legal authority.
The stated purpose of the regulatory scheme is “to ensure that taxpayers clearly reflect income attributable to controlled transactions and to prevent the avoidance of taxes with respect to such transactions.” 26 C.F.R. § 1.482 — 1(1)(a). In the context of this case, neither regulation more clearly implements that purpose than the other. Controlled and uncontrolled parties always operate under materially different circumstances with regard to employee stock option costs. Accordingly, the “all costs” regulation may simply reflect the conclusion that, whatever uncontrolled parties might do, requiring controlled parties to share such costs “ensure[s] that taxpayers clearly reflect [the] income attributable to [the] controlled transaction[ ]” as a whole. Nor is it clear that excluding those costs would better achieve tax parity. It is not the identity of treatment with respect to a single item that controls with respect to this general goal, but the overall manner in which the transaction is treated. The Commissioner has determined that including “all costs” is the best manner of achieving this general objective, and his decision does not appear to be unreasonable.
*1200 Similarly, Treasury’s Technical Explanation of the 1997 United States-Ireland Tax Treaty does not justify disregarding the “all costs” requirement when determining deductible costs. A Technical Explanation is not subject to the APA’s notice and comment requirement and does not carry the force of law. See 5 U.S.C. § 553(a)(1) (exempting “foreign affairs funetion[s] of the United States” from the APA); see, e.g., Explanation of Convention with Ireland (1997) (“The Technical Explanation is an official guide to the Convention and Protocol.” (emphasis added)). Certainly, it cannot trump the plain language of the duly enacted “all costs” regulation, which does have the force of law and is entitled to this court’s deference. United States v. Mead Corp., 533 U.S. 218, 226-27, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001); cf. Cent. Laborers’ Pension Fund v. Heinz, 541 U.S. 739, 748, 124 S.Ct. 2230, 159 L.Ed.2d 46 (2004) (“[N]either an unreasoned statement in the manual nor allegedly longstanding agency practice can trump a formal regulation with ... the force of law.”).
I recognize that Xilinx and amici have raised serious doubts as to whether the result that I believe to be legally required is, from both a practical and an equitable standpoint, the proper one. I am particularly troubled by the international tax consequences that such a result would apparently create. Tax law, however, involves the resolution by Congress of complex political and economic issues that sometimes may affect business or individual interests in unforeseen ways, and sometimes in ways that benefit one political or economic interest at the expense of another. These resolutions are not always arrived at in an open, objective, or non-political manner. To put it plainly, fairness is not always Congress’s ultimate objective in enacting tax legislation. Accordingly, some provisions of tax law may appear to some businesses, individuals, or even judges to be in conflict with reasonable or sensible tax or national policy. Yet they may reflect the intent of Congress when it enacted the statute. Tax regulations are frequently even more complex than the legislation they implement, and it is often difficult for judges to clearly resolve their meaning. Still, it is the job of the courts to make the necessary determinations and in doing so to apply established legal rules and principles. By contrast, it is the business of Congress and the Treasury, not the courts, to correct any errors in those statutes or regulations, especially as they can be readily corrected once they are called to their attention.
For the reasons I have explained, it is particularly inappropriate for courts to resolve tax cases on a practical or equitable basis or to interpret tax statutes and regulations other than strictly in accordance with settled legal principles. The canon of construction under which the specific controls the general is one such settled legal principle, and one that is especially pertinent here. Indeed, it is controlling. I adhere to the previous majority opinion of this court.[2]
For these reasons, I respectfully dissent.

. To be clear, I refer here only to the regulations in effect during tax years 1997, 1998, and 1999. I express no view as to whether subsequent regulations resolved this conflict.

. I, like Judge Fisher, am less than enthusiastic about the Commissioner's explanation of how he believes we should resolve this case. His preference is that we find somehow that the arm’s length standard is met by way of the all costs requirement. I must confess that I have difficulty following his reasoning and, like Judge Fisher, am not persuaded by that argument. However, the Commissioner then says that if we still believe that the two provisions are in conflict, we must apply the rule on which Judge Fisher originally relied and on which I continue to rely. I guess I am just *1201 not as sensitive as Judge Fisher. Simply because the Commissioner advanced an argument that we reject, but then argued that if we reject it, we should apply the rule that we held applicable in our opinion is hardly a reason for abandoning the rule that we believed to be correct. We can't expect anyone, let alone the Commissioner of Internal Revenue, to agree completely with everything we say. Rejecting the Commissioner's first argument leaves us exactly where we were before he advanced it: The two regulations are in conflict, and (as Judge Fisher and I once agreed) that conflict must be resolved by applying the specific regulation rather than the general one.