# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 11, 2016

Lyle W. Cayce
Clerk

No. 15-10854

JUDY HUNTER, on behalf of herself, individually, on behalf of all others similarly situated; as a member of the Acme Brick Company 401(k) Retirement and Savings Plan Investment/Administrative Committee; and as a member of the Acme Brick Company Pension Plan Retirement; ANITA GRAY, individually, and on behalf of all others similarly situated; BOBBY LYNN ALLEN, individually, and on behalf of all others similarly situated,

> Plaintiffs - Appellants

v.

BERKSHIRE HATHAWAY, INCORPORATED; ACME BUILDING BRANDS, INCORPORATED,

> Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before CLEMENT and OWEN, Circuit Judges, and JORDAN, District Judge.*

EDITH BROWN CLEMENT, Circuit Judge:

In this ERISA action, Plaintiffs–Appellants Judy Hunter, Anita Gray, and Bobby Lynn Allen appeal the district court's dismissal of their claims against Berkshire Hathaway, Inc. ("Berkshire") and Acme Building Brands, Inc. ("Acme"). For the following reasons, we AFFIRM the district court's

---

* District Judge of the Southern District of Mississippi, sitting by designation.

No. 15-10854

dismissal of the claims against Acme, AFFIRM the district court's dismissal of the derivative breach of fiduciary duties claim against Berkshire, and REVERSE the district court's dismissal of all other claims against Berkshire.

## I.

In 2000, Berkshire bought Justin Industries, Inc. ("Justin"). At the time, Justin's subsidiary Acme provided its eligible employees with certain retirement benefits, including an ability to participate in a company Pension Plan or an individual 401(k) Plan.[1] Acme matched fifty percent of an employee's contributions to his or her 401(k) Plan on an annual basis, up to five percent of the employee's compensation. Acme was the named sponsor and fiduciary of both plans, and it delegated administration of both plans to two committees, the 401(k) Plan Investment/Administrative Committee ("the 401(k) committee") and the Pension Plan Retirement/Administrative Committee ("the Pension Plan committee").

In conjunction with Berkshire's purchase of Justin, the parties executed an Agreement and Plan of Merger (the "merger agreement"). Section 5.7 of the merger agreement stated the following:

> Section 5.7 Employee Matters (a) . . . Parent [Berkshire] shall, and shall cause the Company [Acme] to, honor in accordance with their terms all employee benefit plans (as defined in Section 3(3) of ERISA) and other employment, consulting, benefit, compensation or severance agreements, arrangements and policies of the Company (collectively, the "Company Plans"); provided, however, that Parent [Berkshire] or the Company [Acme] may amend,

---

[1] The Pension Plan is a "defined benefit plan" funded entirely by Acme, and its benefits are determined by a formula, contained in the plan document, based on years of service and salary during those years. *See* 29 U.S.C. § 1002(35). The 401(k) Plan is an "individual account plan" or a "defined contribution plan" that is "a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account." *Id.* § 1002(34).

> modify or terminate any individual Company Plans in accordance with the terms of such Plans and applicable law (including obtaining the consent of the other parties to and beneficiaries of such Company Plans to the extent required thereunder); provided further, that notwithstanding the foregoing proviso, Parent [Berkshire] will not cause the Company [Acme] to (i) reduce any benefits to employees pursuant to [the Company Plans] for a period of 12 months following the Effective Time, (ii) reduce any benefit accruals to employees pursuant to any such Plans that are defined benefit plans, or (iii) reduce the employer contribution pursuant to any such Plans that are defined contribution pension plans. . . .

In 2006, Berkshire allegedly contacted Acme about the possibility of imposing a "hard freeze" on the Pension Plan that would eliminate any future accruals of benefits for plan participants and would preclude participation in the Pension Plan by new employees. After receiving advice from outside ERISA counsel, Acme advised Berkshire that a hard freeze would violate section 5.7 of the merger agreement and ERISA. Berkshire dropped the issue until the summer of 2012, when it informed Acme that it wanted to move forward with reducing retirement benefits.

During the 2012 discussions, Acme allegedly discovered that it had mistakenly reduced the 401(k) Plan's company matching contribution from fifty percent to twenty-five percent for 2010 and 2011. Acme informed Berkshire that such a reduction was not permitted under section 5.7 of the merger agreement. Berkshire directed Acme not to make any retroactive corrections and further mandated that Acme not prospectively restore the company match to fifty percent. Accordingly, Acme's matching contribution remained at twenty-five percent through 2013. In January 2013, plaintiffs contend that Acme was forced by Berkshire to "adopt a 'soft freeze'

immediately." Effective March 1, 2013, new employees were prevented from participating in the Pension Plan.

In 2014, Berkshire allegedly again contacted Acme about reducing or eliminating benefits in Acme's retirement plans. The committees, as plan administrators, reviewed and analyzed the plans and the merger agreement, considered other options, and consulted outside ERISA counsel. Ultimately, the committees concluded that section 5.7 of the merger agreement unambiguously precluded Acme from implementing a 'hard freeze' on the Pension Plan and prevented Acme from making the company contributions reduction requested by Berkshire and mistakenly implemented in 2010 and 2011 and maintained through 2013. The committees filed formal reports under the Berkshire Code of Business Conduct and Ethics and sought guidance from Berkshire's Audit Committee. Without resolution from the Audit Committee, the 401(k) and Pension Plan committees sent a letter to Acme's Board of Directors demanding that Acme retroactively restore the fifty-percent matching contributions for 2010-13. The letter threatened legal action if Acme did not make the requested payments.

Berkshire allegedly responded by directing Dennis Knautz, Acme's President and Chief Executive Officer, to give the committees an ultimatum: either (1) agree to an immediate "hard freeze" of the Pension Plan and restore the 401(k) Plan's employer matching contribution to fifty percent, with the caveat that it could be changed any time after 2014; or (2) agree to a "hard freeze" of the Pension Plan to be effective in five years and leave the 401(k) employer match at twenty-five percent. Knautz allegedly "reported that these alternatives were nonnegotiable, and that if neither of the alternatives were accepted by the Committees, then Berkshire . . . intended to divest itself of Acme as a subsidiary." As a result, Acme's senior management faced a difficult situation: they viewed section 5.7 to preclude them from legally amending the

plans in the manner in which Berkshire demanded, but failure to amend the plans would result in Berkshire's divestiture of Acme. Acme ultimately chose the first option and amended the Pension Plan on August 11, 2014.

Consequently, Judy Hunter, Anita Gray, and Bobby Lynn Allen, who are current and retired employees of Acme, sued Acme and Berkshire.[2] Plaintiffs, as plan participants and fiduciaries, on behalf of themselves and others similarly situated, sought declaratory and injunctive relief, damages, attorney's fees, and costs.[3] Plaintiffs sought declaratory relief under section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), alleging (1) that the terms of the plans were amended by section 5.7 of the merger agreement to restrict changes to the plans as set forth in section 5.7, and (2) that the purported amendment to the plans dated August 11, 2014 violated the retirement plans, as amended by the merger agreement.[4] Plaintiffs also alleged that Acme breached its fiduciary duties under ERISA. Plaintiffs alleged that Berkshire knowingly participated in Acme's breaches of fiduciary duties. Further, plaintiffs asserted an alternative breach-of-contract claim against Berkshire. In lieu of answering the complaint, defendants moved to dismiss all claims. The district court

---

[2] Plaintiffs are participants in one or both plans. Hunter is Acme's Chief Financial Officer and a member of both the 401(k) committee and the pension committee.

[3] Specifically, plaintiffs' complaint asserted eight causes of action: Count 1: to obtain a declaratory judgment that section 5.7 of the merger agreement amended the retirement plans; Count 2: breach of fiduciary duty under ERISA with respect to the 401(k) Plan against Acme; Count 3: breach of fiduciary duty under ERISA with respect to the Pension Plan against Acme; Count 4: to enforce and obtain relief for violations of the terms of the retirement plans and ERISA, other injunctive and equitable relief pursuant to ERISA against all defendants; Count 5: declaratory judgment and injunctive relief under 29 U.S.C. § 1132(a)(3) against all defendants; Count 6: alternative claim for breach of contract against Berkshire; Count 7: Berkshire's knowing participation in Acme's breach of fiduciary duty; Count 8: attorneys' fees, expenses, and costs against all defendants.

[4] Both parties agree that this provision created a binding amendment to the Pension Plan and the 401(k) Plan, but defendants made this concession only for purposes of its motion to dismiss.

No. 15-10854

granted the motion and dismissed all claims with prejudice. Plaintiffs appealed.[5]

## II.

This court reviews de novo a district court's order on a 12(b)(6) motion to dismiss for failure to state a claim. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (internal quotation marks omitted). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citation omitted).

## III.

Plaintiffs argue that the district court erred by dismissing its claims against Acme and Berkshire because the merger agreement, which amended the Pension Plan and 401(k) Plan, requires maintenance of Pension Plan accruals and 401(k) company matching levels. Plaintiffs contend that the district court also erred in its interpretation of the merger agreement and its handling of plaintiffs' allegations. We address plaintiffs' claims against Acme and Berkshire in turn.

### a.

Plaintiffs' claims against Acme stem from actions it took concerning the Pension Plan and 401(k) Plan. Plaintiffs allege that Acme's actions were

---

[5] Plaintiffs appeal the dismissals of all the ERISA related claims, but do not appeal the dismissal of their breach-of-contract claim against Berkshire (Count 6).

contrary to the plans' terms, as amended by the merger agreement. We disagree.

Section 5.7 of the merger agreement expressly allows Acme to "amend, modify or terminate any individual Company Plans in accordance with the terms of such Plans and applicable law." Further, the disputed provisos—(ii) and (iii)—do nothing to restrict Acme from amending, modifying, or terminating any of the plans. The provisos instead restrict Berkshire from causing Acme to reduce benefit accruals or employer contributions. Thus, plaintiffs' prayers to "enjoin[ ] Acme from amending the Pension Plan to reduce or eliminate future benefits and accruals" and to "enjoin[ ] Acme from failing to make such 50% contributions to the 401(k) Plan in the future" are wholly inconsistent with a fair reading of Section 5.7 of the merger agreement. *See Habets v. Waste Mgmt., Inc.*, 363 F.3d 378, 382 (5th Cir. 2004) ("Where the contract language is clear and unambiguous, the parties' intent is ascertained by giving the language its ordinary and usual meaning."). Accordingly, plaintiffs have failed to plead a plausible claim to relief that Acme acted inconsistent with the plans when it adopted the amendment to the Pension Plan in August 2014 and did not retroactively increase its 401(k) matching contributions.

Additionally, we agree with the district court that plaintiffs have failed to state plausible claims for breaches of fiduciary duties against Acme. Acme acted akin to a settlor of a trust, rather than in a fiduciary capacity, when it implemented the amendment in August 2014. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 890–91 (1996) ("Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries."). Plaintiffs argue that the settlor defense misses the basic point because "[d]efendants violated the express language of the Plans themselves, and any violation of the Plans is a breach of fiduciary duty." But as discussed above, Acme did not violate the express

language of section 5.7 when it adopted the amendment because section 5.7 places no restriction on Acme's ability to alter or amend the plans, except that it must do so in accordance with the plans' terms and the law. Thus, Acme did not violate the plans and did not breach its fiduciary duties when it adopted the amendment consistent with the plans' terms and the law. Dismissal of plaintiffs' claims against Acme—the declaratory, equitable, and injunctive relief claims, and the breach of fiduciary duty claims—was appropriate.[6]

**b.**

Plaintiffs argue that the district court erred by dismissing their claims against Berkshire because Berkshire caused Acme to amend the Pension Plan and 401(k) Plan in direct violation of Section 5.7 of the merger agreement. Plaintiffs allege that at the time of the merger agreement, the Pension Plan was overfunded by approximately sixty million dollars. As a result, plaintiffs contend that subparagraphs (ii) and (iii) were "included in the Merger Agreement to secure and protect, both contractually and under ERISA, participants' future benefits under the Retirement Plans in light of new ownership, as well as the significantly overfunded financial position of the Pension Plan."

---

[6] Plaintiffs argue that if we affirm the dismissal of their claims, reversal is still required because they should have been granted leave to amend their complaint. But the district court did not abuse its discretion by denying leave to amend because the plaintiffs never gave the district court an opportunity to exercise its discretion to permit an amendment. Plaintiffs did not move to alter, amend, or seek relief from the judgment under either Federal Rules of Civil Procedure 59(e) or 60. And plaintiffs only reference an amendment in one line at the conclusion of their memo in opposition to the motion to dismiss: "For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss in its entirety; alternatively, grant Plaintiffs a reasonable time to amend the Complaint to cure any deficiencies the Court may identify; and grant Plaintiffs such other and further relief to which they may be entitled." This throw-away line is not enough to put the matter before the district court.

No. 15-10854

The district court read plaintiffs' complaint to seek unalterable, lifetime benefits. It rejected plaintiffs' claims by relying on principles of contract law. Citing *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 937 (2015), it noted that the parties' agreement must unambiguously reflect their intent to vest lifetime benefits. Because section 5.7 of the merger agreement is silent regarding the duration of maintaining Pension Plan benefit accruals and the employer matching contributions, the district court held that the provision could not be read to vest benefits for life. Rather, the district court read the provisions to be operative for a reasonable time. And because plaintiffs' complaint did not allege that fourteen years was an unreasonable amount of time, the district court dismissed plaintiffs' claims.

The district court erred in its construction of plaintiffs' claims against Berkshire. Plaintiffs' complaint did not seek only lifetime, unalterable benefits. Alternatively, it sought to enforce a contractual commitment rather than a vested benefit under ERISA. This is evident by plaintiffs seeking "an order enjoining Berkshire Hathaway from causing Acme to reduce any benefits or benefit accruals to employees pursuant to the Pension Plan" and "an order enjoining Berkshire Hathaway from causing Acme to reduce any employer contribution to the 401(k) Plan."

"ERISA regulates pension benefits through statutory accrual and vesting requirements." *Spacek v. Mar. Ass'n*, 134 F.3d 283, 287 (5th Cir. 1998), *abrogated on other grounds by Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739 (2004). An employer can impose extra-ERISA contractual obligations upon itself, and when it does so, "these extra-ERISA obligations are rendered enforceable by contract law." *Id.* "Extra-ERISA commitments must be found in the plan documents and must be stated in clear and express language." *Id.* at 293 (citing *Wise v. El Paso Nat. Gas Co.*, 986 F.2d 929, 937 (5th Cir. 1993)).

9

No. 15-10854

"Employers generally are free under ERISA to modify or terminate plans, but if the plan sponsor cedes its right to do so, it will be bound by that contract." *Halliburton Co. Benefits Comm. v. Graves*, 463 F.3d 360, 378 (5th Cir. 2006), *decision clarified on denial of reh'g*, 479 F.3d 360 (5th Cir. 2007). "This court has recognized that a reservation-of-rights clause in a plan document, which allows a company to amend or terminate a plan at any time, 'cannot vitiate contractually vested *or bargained-for rights*. To conclude otherwise would allow the company to take away bargained-for rights unilaterally.'" *Id.* (quoting *Int'l Ass'n of Machinists & Aerospace Workers v. Masonite Corp.*, 122 F.3d 228, 233 (5th Cir. 1997)). "An employer 'vests' a benefit under ERISA when it intends to confer unalterable and irrevocable benefits on its employees, and it does so by using clear and express language." *Halliburton*, 463 F.3d at 377.

Section 5.7 imposes a limitation on Berkshire in that Berkshire may not *cause* Acme to reduce enumerated benefits. But that provision does not restrict Acme itself from reducing future Pension Plan benefit accruals or 401(k) Plan employer contributions if Acme acts independently. Thus, plaintiffs do not seek vested benefits because they acknowledge that Acme, acting independently, can terminate the benefits. Section 5.7's limitation on Berkshire imposes "no temporal limit," but that fact does not mean that plaintiffs seek vested, unalterable lifetime benefits. Instead, we view plaintiffs' allegations as seeking to enforce a provision of the merger agreement that limits the scope of future ERISA plan amendments. *Halliburton Co. Benefits Comm. v. Graves*, 463 F.3d 360 (5th Cir. 2006)—where this court enforced a merger-agreement clause limiting the scope of future ERISA plan amendments—informs our decision.

The dispute in *Halliburton* arose following the 1998 merger of Halliburton and Dresser Industries. 463 F.3d at 362. "As part of the merger agreement, Halliburton agreed to maintain the Dresser Retiree Medical

No. 15-10854

Program for eligible participants, except to the extent that any modifications to the program are consistent with changes in the medical plans provided by Halliburton for similarly situated active employees." *Id.* In 2003, Halliburton amended three subplans of the Dresser Retiree Medical Program, but did not make similar modifications to the plans for its own similarly situated employees. *Id.*

After Dresser retirees complained that these changes violated the merger agreement, Halliburton filed an action against the retirees, seeking a declaration that its amendment to the subplans did not violate the plan, the merger agreement, or ERISA, and that the merger agreement did not limit Halliburton's right to amend or terminate Dresser's retiree program. *Id.* The district court granted partial summary judgment in favor of the retirees. *Id.* at 368. It ordered that "Halliburton must maintain the Dresser Retiree Medical Program for eligible participants and may adjust benefits in that program only if it makes identical changes to benefits for similarly situated active employees." *Id.* at 369.

On appeal, Halliburton argued that "the district court's order requiring Halliburton to maintain the program amounts to an impermissible vesting of the Retirees' benefits because there is no temporal limitation on Halliburton's requirement to continue benefits under the program." *Id.* at 370. This court rejected that argument, stating that "[a]n employer 'vests' a benefit under ERISA when it intends to confer unalterable and irrevocable benefits on its employees, and it does so by using clear and express language. . . . Nothing in [the merger agreement] requires Halliburton to maintain the retiree program indefinitely; rather, Halliburton is free, at any time and for any reason, to amend or terminate the program, as long as it does the same for its similarly situated active employees." *Id.* at 377.

11

No. 15-10854

The facts here are comparable to those in *Halliburton*.[7] Acme can make any changes to the ERISA plans, but Berkshire can "not cause the Company [Acme] to . . . (ii) reduce any benefit accruals . . . [or] (iii) reduce the employer contribution . . . ." Similarly, in *Halliburton*, Halliburton could modify the Dresser retiree plans, but only if those changes were consistent with changes made to the medical plans of similarly situated active Halliburton employees. Additionally, the restrictive provisos here, like the provision in *Halliburton*, impose no time limit for how long Berkshire is prevented from causing Acme to reduce certain benefits.

Here, the district court highlighted that the restrictive provisos in the merger agreement were silent regarding their duration. Thus, it concluded that such restrictions should not operate in perpetuity but only for a reasonable time. Because plaintiffs failed to assert that the adoption of the amendment fourteen years after the merger agreement was unreasonable, the district court dismissed their claims. We disagree with this conclusion. Plaintiffs' entire theory rests on the premise that the amendment allegedly caused by Berkshire, whether fourteen years after the merger or forty years after the merger, is unreasonable under the circumstances, and violates the merger agreement and the plans. Thus, we hold that plaintiffs have pleaded sufficient facts to assert a plausible claim to relief against Berkshire. All of plaintiffs' claims against Berkshire may proceed,[8] except for its breach-of-contract claim

---

[7] Even though *Halliburton* involved welfare benefits, the same analysis concerning an employer's ability to restrict itself contractually from making future amendments to benefit plans applies in the pension-benefit context. This court has used analyses from welfare-benefit cases to inform its analysis of a pension-benefit case when ERISA statutory differences between pension and welfare benefits were irrelevant to the analysis. *See Spacek*, 134 F.3d at 293.

[8] We decline to address those issues raised by the defendants but not reached by the district court in the first instance. The issues include defendants' argument that Judy Hunter lacks standing to sue in a fiduciary capacity and that Berkshire did not have sufficient

(*i.e.*, Count 6) that was not appealed and its participation in Acme's breach-of-fiduciary-duty claim (*i.e.*, Count 7). Because we found that plaintiffs did not plead sufficient facts to assert a plausible breach-of-fiduciary-duty claim against Acme, we also find that the derivative participation claim fails against Berkshire. We thus affirm the dismissal of that claim.

## IV.

For the foregoing reasons, we AFFIRM the district court's dismissal of the claims against Acme, AFFIRM the district court's dismissal of the derivative breach of fiduciary duties claim against Berkshire, and REVERSE the district court's dismissal of all other claims against Berkshire, and REMAND to the district court.

---

minimum contacts with Texas for the assertion of jurisdiction over it. The district court may consider these issues on remand as necessary.