Greg PFEIFER and Andrew Dorley, Plaintiffs,

v.

WAWA, INC., et al., Defendants.

Civ. No. 16-497

United States District Court, E.D. Pennsylvania.

Filed 10/06/2016

Daniel Feinberg, Feinberg Jackson Worthman & Wasow LLP, Oakland, CA, R. Joseph Barton, Jamie Bowers, Cohen Milstein Hausfeld & Toll PLLC, Washington, DC, Richard E. Donahoo, Donahoo & Associates PC, Tustin, CA, for Plaintiff.

Brian T. Ortelere, Andrew Napier, Jeremy P. Blumenfeld, Morgan Lewis & Bockius LLP, Philadelphia, PA, David I. Monteiro, Morgan Lewis & Bockius LLP, Dallas, TX, for Defendant.

## ORDER

Paul S. Diamond, Judge.

Plaintiffs Greg Pfeifer and Andrew Dorley, on behalf of a putative class of terminated Wawa employees, allege that Defendants Wawa Inc., its Employee Stock Ownership Plan Trustees, and its Plan Administrators violated ERISA by amending the Plan to eliminate Plaintiffs' right to own Wawa stock, forcing liquidation of Plaintiffs' Wawa stock at an unfair price, and misrepresenting Plaintiffs' rights under the Plan. Defendants move to dismiss all claims. (Doc. No. 31.) I will largely deny Defendants' Motion.

### I. Factual Allegations

The Plan is an ERISA-qualified employee benefit plan sponsored by Wawa and whose primary asset is Wawa equity. (FAC, Doc. No. 20, ¶¶ 25-26.) Wawa is a privately held company; Plan Trustee (and Defendant) Wood and his family own the largest number of shares outside the Plan itself. (Id. ¶ 27.)

Before the challenged amendment, the Plan provided terminated employee participants (including Plaintiffs) the same benefits as participants who retired from Wawa at their designated retirement date. (Id. ¶¶ 11-12, 32.) Participants holding more than $5,000 in their Plan accounts could receive their benefits in either a single lump sum payment or in installment payments over ten years. (Id. ¶ 32.) The Plan also provided both terminated and retired employees with a put option (which they could execute before age 68) to sell their shares back to Wawa at an appraised price. (Id. ¶ 35.) Defendants provided Summary Plan Descriptions describing these terms. (Id. ¶¶ 33-34.)

In August 2015, however, Defendants amended the Plan to divest terminated employees—but not retired employees—of their shares in Wawa stock. (Id. ¶¶ 50-51.) Terminated employees were also not allowed to remain Plan participants. (Id. ¶ 53.) On September 11, 2015, Defendants effectuated the forced sale at $6,940 per share (below fair market value) and charged a distribution fee. (Id. ¶¶ 61, 63, 67-79.) The price of Wawa shares has increased since the September 2015 forced sale, and reached $7,652 per share on December 30, 2015. (Id. ¶¶ 74-75.)

## II. Legal Standards

On February 1, 2016, Pfeifer brought suit. (Doc. No. 1.) After Plaintiffs amended the Complaint, Defendants moved to dismiss all counts. (Doc. No. 31.) In deciding Defendants' Motion, I must conduct a two-part analysis. First, I accept factual allegations, and disregard legal conclusions or mere recitations of the elements. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). I then determine whether the allegations make out a "plausible" claim. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The burden is on Defendants to show that the plaintiff has failed to allege facts sufficiently detailed to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

## III. Discussion

### A. Anti-Cutback

■ In Count V, Plaintiffs allege that the Plan Amendment violated ERISA's anti-cutback provision: "The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan ...." ERISA § 204(g), 29 U.S.C. § 1054(g). Moreover, "a plan amendment which has the effect of (B) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits." Id. § 1054(g)(2).

When Congress enacted ERISA, it also amended the Internal Revenue Code "with nearly verbatim replication" of numerous ERISA provisions "to condition the eligibility of pension plans for preferential tax treatment on compliance" with ERISA. Cent. Laborers' Pension Fund v. Heinz, 541 U.S. 739, 746, 124 S.Ct. 2230, 159 L.Ed.2d 46 (2004). The ERISA anti-cutback rule thus shows up "in substantially identical form as 26 U.S.C. § 411(d)." Id. Accordingly, regulations referring "only to the Internal Revenue Code version of the anti-cutback rule ... apply with equal force to ERISA § 204(g)," and Treasury's interpretation is entitled to deference. Id. at 747, 124 S.Ct. 2230; 29 U.S.C. § 1202(c).

Treasury has determined that the "right to a particular form of investment (e.g., investment in employer stock or securities)" is not a protected benefit under the IRC anti-cutback provision. 26 C.F.R. § 1.411(d)–4(A–1)(d)(7). Various courts have adopted Treasury's view. Hoffman v. Tharaldson Motels, Inc. Emp. Stock Ownership Plan, 2010 WL 749788, at *1 (D.N.D. Feb. 26, 2010) (no violation of anti-cutback rule where plan eliminated ESOP participant's right to own company stock); cf. Thompson v. Ret. Plan for Emps. of S.C. Johnson & Sons, Inc., 663 F.Supp.2d 700, 707 (E.D. Wisc. 2009) (no violation of anti-cutback rule where plan changed allocation of debt and equity securities in portfolio). Plaintiffs offer no good reason for me to reject this interpretation. Accordingly, Defendants did not violate the anti-cutback rule by eliminating Plaintiffs'

rights to own Wawa shares through the Plan.

■ The allegation that Defendants unlawfully liquidated Plaintiffs' accounts and forced their transfer is quite another matter. See 26 C.F.R. § 1.411(d)–4(A–2)(a)(3)(v) (permitting distributions without accountholder's consent only where account contains less than $5,000). Accordingly, to the extent that Plaintiffs base their anti-cutback claim on the liquidation of their accounts (and not the forced sale of Wawa stock) it survives Defendants' Motion.

*B. Invalidation of the Plan Amendment*

■ In Count VI, Plaintiffs allege that their ownership of Wawa shares must be reinstated because the terms of the Plan, including the right to hold Wawa shares through age 68, became fixed when Plaintiffs completed performance in 2009, restricting Defendants' ability to amend the Plan. "A pension plan is a unilateral contract which creates a vested right in those employees who accept the offer it contains by continuing in employment for the requisite number of years." Kemmerer v. ICI Americas Inc., 70 F.3d 281, 287 (3d Cir. 1995) (quoting Pratt v. Petroleum Prod. Mgmt. Emp. Sav. Plan, 920 F.2d 651, 661 (10th Cir. 1990)). Accordingly, "when a participant leaves the employ of the company, the trustee is 'required to determine benefits in accordance with the plan then in effect,'" and any subsequent amendment that diminishes a participant's benefits is ineffective. Id. (quoting Pratt, 920 F.2d at 661.) This principle applies to all pension plans, not just "top-hat" plans. Pratt, 920 F.2d at 660. The Plan in effect when Plaintiffs completed performance in 2009 granted them a valuable option to hold or sell Wawa stock and the Plan Amendment deprived Plaintiffs of that value. See Scully v. US WATS, Inc., 238 F.3d 497, 508 (3d Cir. 2001).

■ Wawa's reservation of a right to amend the Plan "at any time" did not necessarily give it the authority to reduce Plaintiffs' benefits under the Plan after Plaintiffs completed performance. (Doc. No. 31-4, § 11.1, at 69.) "[E]ven when a plan reserves to the sponsor an explicit right to terminate the plan, acceptance by performance closes that door under unilateral contract principles (unless an explicit right to terminate or amend after the participants' performance is reserved)." Kemmerer, 70 F.3d at 287–88. At a minimum, the Plan is ambiguous as to whether Wawa could amend the Plan "after the participants' performance." Id.; In re New Valley Corp., 89 F.3d 143, 151–52 (3d Cir. 1996) (plan that reserved to sponsor right to terminate "at any time" was ambiguous as to whether sponsor could terminate after participants' performance); cf. McGrath v. Rhode Island Ret. Bd., 88 F.3d 12, 18 (1st Cir. 1996) ("[A]n express and unqualified reservation of the power to amend or terminate a pension plan is only to be given effect up to the point at which an employee's rights under the plan vest.").

Hooven v. Exxon Mobil Corp. does not foreclose application of unilateral contract principles to Plaintiffs' claim. 465 F.3d 566 (3d Cir. 2006); (Doc. No. 31-1, at 36-37.) Hooven concerned a welfare benefit plan, not a pension benefit plan. 465 F.3d at 573. ERISA exempts welfare plans from the vesting requirements applicable to pension plans, and, consequently, plan sponsors are generally free to modify welfare plans at any time. Id. at 574. Moreover, Hooven itself recognized that unilateral contract principles apply where, as here, the contract "is based on the explicit promises in the ERISA plan documents themselves." Id. at 573 (quoting Carr v. First Nationwide Bank, 816 F.Supp. 1476, 1490–91 (N.D. Cal. 1993)). Accordingly, I will deny Defendants' Motion to Dismiss Count VI.

### C. Misrepresentation

■ Plaintiffs base counts IV, VII, and VIII on alleged misrepresentations in Plan SPDs. Such documents must be "written in a manner calculated to be understood by the average plan participant," "sufficiently accurate and comprehensive to reasonably apprise [plan] participants of their rights and obligations under the plan," and "must not have the effect [of] misleading, misinforming or failing to inform participants and beneficiaries." 29 U.S.C. § 1022(a); 29 C.F.R. § 2520.102–2(b).

Plaintiffs allege that Defendants made two misrepresentations in the SPDs: (1) "[N]o amendment to the Plan will reduce the benefit you have already earned, or divest you of any entitlement to a benefit"; and (2) terminated employees would be paid their vested benefits "in the same form and manner as retirement benefits." (FAC ¶¶ 34, 38, 41, 125(a)-(b).) Plaintiffs' claim respecting the first statement is plainly an attempt to describe Defendants' obligations under the anti-cutback rule. Nonetheless, Plaintiffs plausibly allege that it is misleading, because Plaintiffs' option right fits within the ordinary meaning of the word "benefit," and because Plaintiffs purportedly understood that they retained the right to hold Wawa stock. Similarly, in light of Defendants' subsequent decision to withdraw the option to hold Wawa stock from terminated employees, I must also conclude at this early stage that the second statement is misleading.

Because Plaintiffs have plausibly alleged misrepresentations in the Plan SPDs, I will deny Defendants' Motion to Dismiss these counts.

### D. Nondisclosure of the 2015 Plan Amendment's Purpose

■ In Count IV, Plaintiffs contend in part that Wood and Stoeckel improperly failed to disclose that the Plan Amendment was intended to restore the Wood family's majority ownership of Wawa. (FAC ¶ 125(d).) To state a claim for breach of fiduciary duty by omission, Plaintiffs must show, inter alia, that "the misrepresentation or inadequate disclosure was material"—that it would "mislead a reasonable employee in making an adequately informed retirement decision, or a decision regarding his benefits under the ERISA plan." In re Unisys Corp. Retiree Med. Benefits ERISA Litig., 579 F.3d 220, 228 (3d Cir. 2009) (internal citations omitted). Plaintiffs have not alleged how Defendants' failure to disclose the motivation underlying the Plan Amendment affected their retirement planning in any way, nor have they offered authority permitting a misrepresentation claim to proceed in remotely comparable circumstances. Accordingly, I will dismiss this claim.

### E. Stock Valuation

■ Counts I, II, III, and VIII each require Plaintiffs to show, under different legal standards, that they were not fairly compensated for their Wawa stock liquidated in the forced sale. Defendants move to dismiss each of these claims, arguing that Plaintiffs received adequate consideration as a matter of law. (Doc. 31-1, at 18-32.) I disagree with Defendants.

As pled, in 2014, Defendants' financial advisor, Duff & Phelps, valued Wawa stock at $7,000 to $7,900 per share, above the forced sale price of $6,940, even though it did not include the anticipated tax benefits from Wawa's 2014 reorganization. (FAC ¶¶ 77-78.) Defendants offered outside shareholders and dissenters $7,000 per share as part of the reorganization, also above the forced sale price. (Id. ¶¶ 45-47, 70.) Defendants purportedly charged an unjustified $50.00 distribution fee. (Id. ¶ 63.) The forced sale price, which was derived from a June 2015 appraisal, was

stale by the time the forced sale occurred. (Id. ¶¶ 67-69, 71.) The share price has continued to rise since the sale. (Id. ¶ 74.)

These allegations are sufficient to make out plausible claims that Plaintiffs did not receive adequate consideration for their stock. Accordingly, I will deny Defendants' Motion to Dismiss these claims.

### F. Invalidation of Indemnification

 In Count IX, Plaintiffs seek to invalidate Wawa's indemnification of the Trustees and Administrators. Plaintiffs have standing to challenge the indemnification provisions because they seek to be restored as Wawa shareholders, and the value of their stock will be reduced if Wawa indemnifies the fiduciary defendants. See Danvers Motor Co. v. Ford Motor Co., 432 F.3d 286, 293 (3d Cir. 2005) ("Monetary harm is a classic form of injury-in-fact.").

The law prohibits any plan provision that "purports to relieve a fiduciary from responsibility or liability" from ERISA-mandated duties. 29 U.S.C. § 1110(a), (b)(3). It "permit[s] indemnification agreements" that function as insurance, but prohibits indemnification by the plan itself. 29 C.F.R. § 2509.75-4. Under the majority view, indemnification by an ESOP sponsor functionally equates to an impermissible indemnification by the ESOP itself. E.g., Johnson v. Couturier, 572 F.3d 1067, 1080 (9th Cir. 2009); Fernandez v. K–M Indus. Hldg. Co., 646 F.Supp.2d 1150, 1154–55 (N.D. Cal. 2009); Delta Star, Inc. v. Patton, 76 F.Supp.2d 617, 640–41 (W.D. Pa. 1999); Donovan v. Cunningham, 541 F.Supp. 276, 289 (S.D. Tex. 1982), rev'd in part on other grounds 716 F.2d 1455 (5th Cir. 1983). But see Harris v. GreatBanc Trust Co., 2013 WL 1136558, at *2 (C.D. Cal. Mar. 15, 2013) (ESOP sponsor permitted to indemnify plan fiduciaries); Pudela v. Swanson, 1995 WL 77137, at *5 & n.4 (N.D. Ill. Feb. 21, 1995). I will follow the reasoning of the majority at this early stage, and deny Defendants' Motion.

**AND NOW,** this 5th day of October, 2016, upon consideration of Defendants' Motion to Dismiss the First Amended Complaint (Doc. No. 31), Plaintiffs' Response (Doc. No. 41), Defendants' Reply (Doc. No. 52), Plaintiffs' Sur-Reply (Doc. No. 53), and all related submissions, it is hereby **ORDERED** that Defendants' Motion is **GRANTED in part.** Counts IV and V are dismissed in part as outlined above. Defendants' Motion is otherwise denied.

### AND IT IS SO ORDERED.